calendar and I think we're ready to start with our first case. Relevant Sports, the United States Soccer Federation. Thank you. May it please the court. The district court below committed a fatal error in dismissing this case because it failed to recognize that Relevant is challenging the FIFA geographic market division policy, which is a written agreement as the Section 1 violation. Having done that, nothing more was required to plausibly state concerted action under Section 1. The court created a requirement to have an antecedent agreement to agree how to vote. None of the Supreme Court cases or this court's cases impose such a requirement as the Antitrust Division has stated in its amicus brief. For more than 100 years, the Supreme Court has found that association regulations, which restrict the competitive activities of members, is itself a Section 1 concerted action. Could you just briefly address, they make the argument that this is a new claim on appeal. Yes, Your Honor. There was no waiver. The challenge to the policy was expressly set forth in the amended complaint, paragraph 37, paragraph 117 to 118. It also was raised directly in the papers below. It was argued by me before the judge. And the district court had a section of her opinion saying that our challenge to the policy itself was not direct evidence. So it could not have been clearer that this was part of the case. I also would say, Your Honor, that the argument that individual members didn't all get to vote is not required under the case law. If you look at the cases, for example, NCA versus Board of Regents, it was a three-person television committee who decided the policy that bound all of the members together, restricting their competition. What constitutes the concerted action is the decision by the national associations who are members, their leagues and teams who also agree that they are certified, to delegate their decision-making authority to these committees. Once that is done, they also agree, and they voted on, the FIFA statutes, which is amended complaint 34, that specifically require them to follow this policy under pain of penalty. Why is it called a sporting principle? Because sports associations like to create kind of a patina. What does that mean? I have no idea. I take it it means something like they're trying to associate it with the rules of the game. And I think what you're saying is this is like when the NCAA invokes amateurism. It's a favorably responded to phrase. So it feels not like we're doing something about the business. We're doing something about the sport. And maybe that sounds a little cynical on my part, but we aren't dealing here, are we, yet with the question of is this actually anti-competitive? So there would be arguments, I assume, that this is somehow essential to sporting integrity in some way, and therefore is not just a naked market division technique. Those aren't really the issue here, right? Your Honor is spot on, both in your analysis as to why they call this a sporting principle. I think it's very reminiscent of the NCAA's defense in the Alston case last year, which the Supreme Court rejected 9-0. And you're also right, this is not the time to decide illegality. We have pled a per se violation, a quick look violation, and a full blown rule of reason. That's for the court below. We'll get to those liability issues. All you have to decide is that we plausibly allege concerted action, which does, in Biden's face, restrain trade. Whether it's an illegal restraint or not is something that will be decided later on. I also would like to briefly address, with the time I have, the personal jurisdiction issue. We hope, and I hope the court will go on to find, as it has the power to do, that there is personal jurisdiction over FIFA in this matter that was not reached by the court below. Well, it was not reached, and not only that, you have a new complaint which makes new allegations with respect to that issue. I take your point that since you didn't sue them in the first complaint, those allegations were not appropriately put in the first complaint. But the fact that it's all new isn't the real issue that we must decide. Put it another way, the only issue we must decide, other than the one you've just been addressing, is whether FIFA is an indispensable party, or at least a necessary party, to trigger the inquiry into personal jurisdiction. Yes, it is correct that it is your discretion whether to decide the personal jurisdiction issue. You could leave that to the court below. Since the case has been pending for three years already without discovery, I was hoping we could resolve that now because it seems to us it's fairly clear it meets the Casey-Schwab test pretty easily, and it also meets the New York law realm jurisdiction. But if the court's not inclined, I would urge you to- The Libor cases are highly relevant here, it seems to me, in terms of conspiracy in persona jurisdiction. But at the same time, we are generally very reluctant to be a court of first instance on questions like this. I appreciate that, Your Honor. Then if you're going to reach the indispensable party issue, I would urge you to find that FIFA is not indispensable, even though we will pursue them below. One, because on damages, it's well established under Texas Radcliffe materials and many authorities, you don't have to join all co-conspirators in an antitrust case to assert damages. Maybe not, but to get relief, isn't your point sort of that so long as USSF is enjoined from invoking the rule, you're golden? Isn't that sort of the argument you made? That's correct, Your Honor. But then isn't the problem that if your theory is correct, that there is a conspiracy or concerted action which is evidenced by everybody signs on and says we're going to be bound in advance, then the delegated authorities make the decision, and then everyone acquiesces? So long as the FIFA policy is in place, it seems to me it's hard to see how the Spanish teams will come back to you. So here's why we believe we will get relief. We plead in the complaint that the Ecuador teams, for example, were already ready and their associations were ready. If USSF had granted a sanction, they would have played despite the policy and taken their legal chances, and that's our pleading, which has to be accepted at this point. And the- Yes, had they been sanctioned, they felt that would excuse them. Second, FIFA itself in its brief said you don't really need our permission, even though we believe the rule binds them. And finally, in the Frazier case we cited, we have a history where the USSF has previously stipulated in a court order not to follow a FIFA policy, and because it was held to be illegal, FIFA didn't impose penalties. And so my view is that if this court or another court finds this is an illegal policy and USSF is enjoined from following it, in that situation, FIFA wouldn't impose its penalties because of the legal determination by the court. And in fact, the USSF bylaws state that they must follow all policies unless they're held to be unlawful. And so I think if it's held to be unlawful, I can get complete relief. Thank you all, and I see I'm over my time. Thank you. We'll hear from the affilee. Thank you, Chief Judge Livingston, and may it please the court. Plaintiff brought this case alleging a broad-based conspiracy involving literally thousands of leagues and teams around the world that allegedly purported to divide up geographic markets for regular season soccer games. The district court rejected that claim under a straightforward application of the Twombly rule. Mr. Kessler also pointed us to, I think rightly, claims in the amended complaint at 117 to 118 where they specifically refer to the policy, however you want to describe it, but they refer to it and allege a policy that appears to be direct evidence of anti-competitive concerted action. Right, and there's no question- Why isn't that enough at this stage? It does refer to the policy, but it does so as one thread of a far-reaching conspiracy. Well, sure, it's a far-reaching conspiracy of everybody through their agent. You know, maybe you want to get onto the merits of this instead of the waiver argument, because I'll tell you, the way I read things, cases, is I start with the district court opinion. I read the district court opinion, and I came away thinking, oh, the issue here is whether the FIFA policy is itself concerted action, because the district court talks about that and rejects it, and that seemed to me an obvious issue. Then I went back after I read your brief and read the complaint in its entirety, and I said, oh, I was right. They raised this from the beginning. So I'm just totally unpersuaded by this waiver argument, and it almost feels to me like you're trying to duck the merits here,  but it just didn't the district court explicitly address the very argument that Mr. Kessler just made to us and reject it? Where would that come from if they didn't allege it and argue it? I would point you to footnote 11 of the district court's decision, and then I'll move on to the merits. Footnote 11 says that plaintiff confirmed at oral argument that it was the worldwide conspiracy that was the argument. Yes, of course it is. It's the same thing. I mean, if you say the NCAA agrees and enacts rules to do whatever they do that the various people who sue them think is illegal under the antitrust laws, what you're saying is effectively that everybody's part of this, because every member of the NCAA, like with FIFA, has pledged from the start that they're going to abide by the rules. They then have their agents, the association, make decisions, and then those decisions are binding on them, and then everyone, unsurprisingly, goes along with it. So I don't understand the distinction that you're trying to make between this global conspiracy and a conspiracy that is implemented through a trade organization. We've had these repeatedly in this court and in the Supreme Court. Well, first of all, Your Honor, FIFA is not like the NCAA in that the members of FIFA, the national associations, are not competitors. They do not allege that they are competitors, so the NCAA is fundamentally different. Second of all, the government itself acknowledges that there's two kinds of cases in this context, one involving broader conspiracies and another involving standards, challenges to a standard, and nothing more and nothing else. You cannot, I respectfully submit, look at the complaint in this case and conclude that this case involves a challenge to a standard and nothing else. In fact, at best, it has to be nothing else. You can plead in the alternative. You can plead a large thing and a smaller thing within it, a subset of it. It just doesn't seem – you're trying to say you have to pick your lane. You have a complaint, and they pick one lane, and they can never get out of it. There has to be something that binds the agreement together, binds members to the agreement. And what you have, as you did in the associated press case, horizontal competitors coming together to adopt bylaws that clearly restrict competition. You can look at that bylaw and say that is evidence of an unlawful agreement. Here, you have a press release that doesn't purport to agree to anything. It simply says that this was discussed at the meeting. It was adopted by a small arm of FIFA. And they're claiming, Your Honor, that thousands of leagues and teams around the world, which are not members of FIFA, were somehow a part of this. No, no, the leagues and teams are not members of FIFA. But there's a structure here that feeds up. You're saying that because you've had this nice little intermediary of the national associations, and they're the members of FIFA, even though they then impose the same rules on the teams and leagues, that somehow that immunizes you? Well, Your Honor, I think if you look at the example of La Liga and the Confederation, La Liga sued the Confederation to try to participate. Sure. Members of cartels often sue each other, and they try to get out of things when there's a particular thing that appeals to them. Mr. Kessler would presumably say that this is just evidence of the fact that these actions are not things that are independently taken by clubs or associations or leagues in their own interest. That's what makes it not anti-competitive, is that they have an interest in doing something, but they've already committed themselves to a cartel. And cartels have this problem all the time. People try to cheat. The cartel tries to enforce. Sometimes the cartel falls apart after that. This is the core antitrust study. This Court in ADSAT and NASL has repeatedly held that you have to show a conscious design to a common scheme and that the members of those schemes are agreeing on individual capacities. NASL is a perfect example. That is a case where there was no attack on the policy, and the Court said, oh, if they were attacking the policy, that would be a whole different story. Didn't we say that in NASL? You did. You said they attacked the standards and the standards alone. But this case is like except it's worse than NASL in that it was the same thing. There was a far-reaching conspiracy. If you look at footnote 11 of NASL, the Court said we're not really sure what's going on here because there's allegations of conspiracy. They seem to be talking about the standards. And with respect, the same counsel was involved. Why can't they plead in the alternative? In other words, why can't they plead a direct evidence case based on a policy as well as, you know, a worldwide conspiracy? Your Honor. And by the way, this is the way, as I understand it, that the district court structured its opinion. So you refer us to footnote 11, which relates to a separate section. The following section is the FIFA policy itself is not direct evidence of a horizontal conspiracy. Right. And, Your Honor, they absolutely could have pleaded in the alternative. They didn't. This case was brought only against U.S. Soccer Federation. If they really had been challenging a FIFA policy, you think they would have named FIFA at the outset. No, they didn't name FIFA because there's an obvious in personam jurisdiction issue with FIFA. They may or may not succeed in overcoming that. But it seems to me it's a perfectly, I can understand very well, a tactical reason why you don't sue FIFA in this case. And they were forced to sue FIFA, so they did. And now we're off to a different race. There's always been a fundamental mismatch between the theory that they made in the complaint, which was based on the notion that thousands of leagues and teams, which are not members of FIFA, somehow conspired to join this planning to oppress release. Do you agree that those thousands of leagues and teams are under the aegis of FIFA and are required by their national associations in almost every case to abide by the FIFA rules? No, there's no plausible allegation to show that all of these leagues and teams agreed or in any way part of an agreement that is embodied in the press release. Don't their national associations govern those leagues? There's a Premier League responsible to the British Association and to UEFA. And isn't the American, whatever they call the thing, Major League Soccer, a component part of USSF and obliged to follow what USSF does? And USSF is a member of FIFA. Is that not all true, everything I just said? That is correct. They're not obligated in the sense of the rules, Your Honor. And again, the legal litigation shows that the leagues and the confederations are not joined together. They have to plead plausible allegations that show that all of these thousands of teams and leagues were all part of the same agreement. So why did the Spanish teams pull back? The allegation in the complaint is they pulled back because they were afraid of sanctions from FIFA. Now, putting aside that we have to accept that as a factual allegation in the complaint, at this stage of the case, can you even tell me with a straight face that that's not what happened? Oh, sure. There's a lot going on. The fans were upset, Your Honor. This isn't about some cartel, as you put it, Your Honor. There's other reasons why you would have official league games played in season. You're talking about moving a game to a different country. And what about the Argentina-Brazil game that was not allowed to be done for national reasons in the home jurisdictions, and it still couldn't come to the United States? Again, the allegation is that all of these leagues and teams somehow abided by this effort to divide up the geographic markets. The mere fact that teams wanted to come here shows that that wasn't a uniform process. No, of course. But that's the whole point is that individuals want to do something because it's in their economic interest, but there is concerted action that prevents it. That's the nature of cartel arrangements. Now, I'm not saying these are facts. These are facts that are alleged. They'd have to be proven. But I'm just not grasping what you're saying here. Applying the associational rules framework in this case would be extraordinary for at least three reasons. First, the national associations are not horizontal competitors. Second, the leagues and teams are not members of the association that they're focusing on, which is FIFA. And third, the press release itself, there's nothing banging about it. I urge you to look at that. When you say they aren't competitors, I suppose, in a sense, it's not like the Spanish Association is trying to recruit the Red Bulls to join them instead of the American League. In that sense, they're not competitors. But isn't the whole allegation here that their structures are competitive because precisely what they're doing here? It is harmful to American soccer leagues and their ability to attract fans to have better games from better leagues played in the United States. Why does that not suggest to you if that is true? Again, that's an economic proposition. Looks good to a casual reader of the sports pages, but that's not how we decide cases. It's something we have to accept for this case. But why isn't that saying that they are, in effect, competitors? Or they could be competitors if it weren't for the fact that they're staying in their lanes. Your Honor, you cannot find an allegation in the complaint that the national associations are competitors. Instead, the whole complaint from page 1 to page 55 is based on the framework that the leagues and teams are the competitors. That's a horizontal conspiracy alleged in paragraph 5. And I would urge you, just taking you back to the district court, because I think this is immensely unfair to Judge Caproni, if you look at pages 52 to 53 of the oral argument on the motion to dismiss, at docket 94, you will see Judge Caproni trying to pin counsel down on what exactly the unlawful agreement is here. She wanted an answer, she said. And counsel said it's the conspiracy among the leagues and teams. Again, showing that this is a conspiracy case. It was never brought as a standard alone case. And talk about unfair to Judge Caproni. Why did she then go on and write a whole section rejecting the very theory that you say was never raised? She, what they argued, and this is in the complaint, was that the policy, along with many other things. I'm sorry. I didn't ask that question, what was in the complaint. I asked why did she write a section rejecting the argument that you say was never made? Well, and I'm explaining why she addressed that, Your Honor. It's because the argument was that the policy was one of many indicia of evidence. This is in paragraph 174 of the complaint, amended complaint, of the overarching conspiracy. And the argument was never that the policy itself was the agreement. And this goes back to, again, Judge Caproni pinning counsel down at pages 52 to 53 of the argument transcript. And the press release cannot be the agreement itself because, one, it's a press release. It doesn't even say they agreed. I would urge you to look at it. It's at A601. All it says is that the counsel discussed this, Your Honor, which is unlike other measures discussed in the press release. So you're disputing the allegations in this complaint? I'm sorry. You're disputing the allegations in this complaint? I'm not, Your Honor. No, I'm happy to walk through them. Paragraph 174, for example, it refers to the policy as one of many pieces of evidence of the conspiracy. And we never dispute it. And this goes back to my friend referred to paragraph 37 and 117 and 118. It's right. They refer to the policy in the complaint. But only as evidence of this far-reaching conspiracy, which is the heart of the complaint, beginning in the opening paragraph. Paragraph 4 alleges the horizontal conspiracy as a conspiracy among the leagues and teams. And that's the fundamental difference. And, again, it goes back to the government's framework, which is you have cases involving conspiracies and different actors and cases involving only a challenge to a standard itself. If this case had been brought to a standard itself, it could have been a five-page complaint. Instead, it's a 55-page complaint with multiple actors, thousands of leagues and teams. But my colleagues keep suggesting it didn't have to be a five-page complaint. There's nothing wrong with pleading in the alternative, adding in other theories. And there is an allegation that this is a policy. I know you say that's not true. It's a press release. There was no statement of policy. But FIFA did have the authority to issue policies. And they allege that this is a policy. Right. And I think, again, Your Honor, I mean, look at they could plead in the alternative. The claim that they pleaded in count one, section one, was based on the notion, and this is in paragraph 164, that the alleged conspiracy was the concerted action. That's what the complaint says. It doesn't say that the policy or the press release was a concerted action. It says the conspiracy was, which is why this case is a conspiracy case. It's not a standard alone case. And it's like NCL in that respect. They've tried to shift their theory, create confusion. This court in NCL saw through that and said, no, this is ultimately something more than the standards themselves. And this case is even more extreme in that there you had a few different actors. Here you have literally thousands all around the world. And ultimately their theory is that all of these different leagues and teams, from Manchester United to Sydney FC, reached agreement consciously through their independent decisions to conspire in violation of the antitrust laws, making them all section one violators subject to treble damages. And that is simply not a plausible reading of this complaint, as Judge Caprone rightly concluded. And I'm happy to shift, and I'm also happy to continue answering any questions that you have. Well, I think you're over time. Yes. We'll hear from your colleagues. Thank you, Your Honors. Thank you, Your Honors. Thank you, Your Honors. Ken Inshamigam of Paul Rice for Appley FIFA. May it please the court, I'd like to make three points in addition to the points that Mr. Garr has just made. Let me just say a word on this question of what the theory was below. And I'm not going to reiterate what Mr. Garr has said. We're going to have to hear about the waiver again, because you two don't really want to talk about the other stuff in the case. I do, and that's going to be my second point. But let me say just a little bit with the court's leave of that. You can say all you want, but you've got five minutes. I will be succinct, Judge Lynch. Do you want to re-hash the same question? I think with regard to the complaint, I think that the critical point is that the policy was being cited only as evidence of the broader conspiracy. And I think that the paragraphs to which Mr. Garr referred makes that clear. Nowhere in the complaint does the complaint say that the policy was itself the concerted action. Could you tell me the difference between, because I'm not an antitrust expert, could you tell me the difference between alleging that a policy adopted by a trade association is direct evidence of a conspiracy and challenging that policy? I think that that is a distinction. And I think that it's a distinction that this court recognized in NASL that Judge Caproni drilled down on at the hearing. And when Judge Caproni addressed in the opinion the question of whether or not the policy was direct evidence of the broader conspiracy, she was conspicuously not addressing whether or not the policy was itself the concerted action. And so what would be the consequence of our accepting your waiver position? They would be forever barred from filing a new five-page complaint that Mr. Garr thinks would be a good complaint. And why would that be? They just have to start over again with a five-page complaint? We don't think that that would be a good complaint. I suspect my friend Mr. Garr doesn't either, and I will get to that in just a second. But that's the – but no, but I'm serious about this. I understand that you don't really think it's a good complaint and you would object to it, but you wouldn't object to it on this ground, I take it. So I'm just not understanding what it is that we're fighting about here. Why shouldn't they just be allowed to amend their complaint if that's the problem? If the problem is they haven't adequately – they pled too big. In ten years as a district judge, I doubt I saw one complaint that wasn't too big and that didn't get narrowed down in the pretrial litigation, but all right. If that's the problem, why can't we just say, well, you can't make that claim because now you've waived that one in this court, but you can trim down your complaint, make it a direct attack, and go to the races. Two points in response to that, Judge Lynch. The first is that they've had ample opportunity in this case to make this kind of claim. Well, but you're telling me that if they file – excuse me, that might be a good reason why they can't amend, but can they file a new lawsuit that says that? And if so, why are we fighting that battle? Why don't we get to the merits of whether what they now claim to have alleged, what they now claim to want to go forward with, is or isn't concerted action? I mean, I'm really happy to get to the merits, but let me just, with your leave, answer this question because I think it's an important question. My first point is that they've had ample opportunity. I think if they were to file a new lawsuit, they would likely be precluded. And keep in mind that this case started with a lawsuit in New York State court where, ironically enough, Relevant asserted that FIFA had no policy whatsoever prohibiting the playing of regular season games abroad. But my second point with regard to this, Judge Lynch, is that, you know, we talk about this in terms of waiver or forfeiture. This really goes to the sufficiency of the allegations in the complaint. And this is not, I want to emphasize, a greater includes the lesser situation. To come back to Chief Judge Livingston's question, the conspiracy that was alleged here, it is beyond doubt, was this broader conspiracy involving thousands of leagues and teams. If the policy is the concerted action, then Relevant has to surmount a different problem, which is that the policy was adopted by a group of non-competitors. And notwithstanding the creative theory that you suggested, Judge Lynch. Where have we said that in the context of a motion to dismiss? So, I don't know that this court has said it for the simple reason that the cases on which my friend Mr. Kessler relies are all cases like NCAA versus Austin and Associated Press, where you have policies adopted by associations of competitors. And I think Mr. Kessler would recognize, he can tell you if I'm wrong about this, that if the policy is the concerted action, precisely because the members of FIFA are national associations, they're not the competitors, the leagues and teams are the competitors, there would be an additional thing that would have to be alleged. Namely, the nexus between the leagues and teams, the competitors, and the national associations. Now, my friend Mr. Kessler's theory, and this is really only set out in the appellate briefing because this wasn't the theory below or in the complaint. His theory is, well, the national associations must have been acting at the behest of the leagues or they must have had a shared economic motive. But there simply are not sufficient allegations under the familiar Trombley and Iqbal standard to make that additional link. And that additional link is required. We seem to have suggested in NASL and other circuits seem to have suggested, for example, the Fourth Circuit, that you don't need that many allegations in connection with showing a policy that is itself direct evidence of concerted action. Am I right or wrong about that? Well, I think you are, you know, right in that it is a motion to dismiss. It's a plausibility standard. But I think you would be wrong if you suggested that it's simply enough to just encant that there was a policy. And that's for the reason that this Court identified in ADSAT. And as my friend Mr. Garr said, not every policy constitutes concerted action. And here the reason not to apply some sort of blanket rule is precisely because a policy was adopted, not so much just by a subset of FIFA members. Mr. Kessler attacks that, but I think that's really a straw man here. The problem is that it's FIFA members.  And I would encourage the Court to pour through this complaint as closely as you would like. And the only allegations of this sort of nexus between these thousands of leagues and teams and all of the national associations are the allegations concerning U.S. soccer and MLS. There are no allegations that in other countries, national associations are acting at the behest of the teams or leagues. And so regardless of whether or not you think this policy is a binding rule. What interests in your view, I mean, what are these associations for? Well, the associations are the governing bodies at the national level to be sure they implement rules. You had a colloquy. They govern the leagues and teams. And the leagues and teams have a lot to, I mean, what is their possible interest in the universe except to promote the well-being of the teams and leagues of that country? What else are they for? Tell me. I just don't understand it. Well, I don't think that you can sort of solve this problem just by suggesting that the national associations are agents of the leagues and teams. And I'll tell you the best. Tell me what they're for. What is their goal if their goal is not promoting the well-being of the, I'm just, you can make it up. No, I don't need you to make it up. I think everyone would actually be in agreement here that what the national associations do is they simply govern the sport in the relevant country. They establish the rules. They implement FIFA's rules. We don't disagree with any of that, Judge Lynch. My point in response to Judge Lohier was simply that for purposes of establishing concerted action here, because in order to have concerted action, you have to have an agreement among competitors, there is an additional showing that would have to be made, namely that the national associations are acting at the behest of the leagues and teams. And that's just subject to the ordinary Twombly-Ippol standard. But I would note that, again, there are no allegations. So if the policy itself suggested precisely that sort of an agreement, you would agree that there wouldn't need to be an additional allegation. I take it that what you're saying is we require of the plaintiffs here some additional allegations of an agreement beyond the policy itself. That is your central argument. It is in the sense that if the claim is that the policy itself constitutes a concerted action, and I'm just going to briefly reiterate that Judge Capone asked about this very issue to seek clarification at the hearing. I guess she didn't get it because she then went on to feel that she had to address it. She did not. I mean, I want to be just as clear as I can be, Judge Lynch, about this. In that section of the opinion, look at the header itself. All she said was the policy was not direct evidence of the broader conspiracy. We address that argument, the argument that Mr. Kessler and his client made below, at great length in our brief, and we have not really debated that today. In other words, we haven't debated whether or not the policy is direct or circumstantial evidence of the broader conspiracy. That is a distinct argument from the argument about whether the policy is itself a concerted action. Well, I look forward to hearing from Mr. Bozo on that. He's going to talk from the vantage point of the antitrust division, and I hope that he will address this question of the distinction between direct, the government's view of the distinction between a policy from a trade association as direct evidence of conspiracy and some other theory. Well, the government has taken no position. I understand they don't take a position on which side they're on. All I said was it's not really addressed to you, it's addressed to him. I hope he will address that question because it confuses me. Well, I'll make one point on that, and then I do really want to get to why this new theory fails and just make sure I lay out on the table all of our merits arguments so that the court can have some comfort. Are they different than the merits arguments that Mr. Garr made? We're largely in alignment, but I think there were a couple of points that he didn't make that I would, with the court's leave, add. I would just say with regard to the government's position that we largely don't disagree with the government, that there's not some overarching requirement of a preexisting agreement to agree, which is to say a rule, an associational rule, can itself constitute the concerted action. It's just that these are different theories, and they are different theories in part because the conspiracies are going to end up being different by virtue of the fact that this policy was adopted not by leagues and teams. I'm still puzzled. Why is that going to be so? Because once an association adopts a rule and then everyone acquiesces in the rule, it seems to me that you're – I don't mean to be offensive, but you're characterizing FIFA as being sort of like the mafia. They come in and say you're going to do this and you're going to do that, and then all of the teams and leagues, if they comply, are just yielding to force majeure. They each have an independent interest in not getting sanctioned by FIFA, and so they all make their independent decisions to fall into line, as opposed to that this entire structure is designed to serve the overall interests of the soccer world. Not surprisingly, I'm going to dissemble with that characterization of my client and simply say that FIFA does something – I'm characterizing that as your argument. I wasn't saying that FIFA is like the mafia. I'm saying you are saying, as I read your briefs, that the reason why there is no concerted action among the leagues and teams is that they each make their independent decision that we're yielding to the fact that if we don't follow the FIFA rules, it's not in my individual interest anymore to do this, as opposed to that there is this overarching structure in which they've agreed to be bound in the first place. They go along because even if it's not in their immediate economic interest, the overall conspiracy is in their interest. Two points, Judge Lynch. First is that FIFA does set the rules. Those are the rules that require, for matches like this, the approval of the relevant member associations and regional confederations. That's at page 177 of the appendix. That was the rule before this press release was issued, and that continues to be the rule to this day. So USSF could unilaterally waive the rule? Is that what you're saying, that the match could be held if USSF does approve it? USSF could provide approval. There would also need to be the approval of the national association in the other country. It was the withholding of that in Spain that prevented the Spanish League match from being played. It's got to be a bilateral agreement between the two national associations in connection with this particular match. They each have to provide their agreement. Can FIFA sanction both national associations? I don't think so, because I think that when you look at how the rules themselves actually operate, the rule that I just cited at A177 reflects a provision of the FIFA statutes, which is at A126, which says, quote, without the latter's approval. I think the most that can be said is that another provision, Article 71.4, which I believe is on the previous page of the appendix, suggests that FIFA might itself be able to veto such a match. It doesn't say, however, that FIFA also has to provide approval. And that's what's so odd about this focus on the press release. We're talking about a single statement in a press release that emphasizes a sporting principle. And I'm not going to get back into the sort of metaphysical debate about what a sporting principle is. I simply want to make the point that this was not some separate official FIFA policy. The council has the power to promulgate regulations and other sorts of official documents that are, by their terms, binding. And what was interesting is that what happened in the wake of that press release being issued was that it was, of course, the Spanish Association that withheld consent. And that led to litigation between the Spanish League and the Spanish Association, which I think underscores that there is not this alignment of interest between national associations on the one hand and leagues and teams on the other. Except that they felt the need to litigate. They felt the need to sue. The League did. That's right. Because the League objected to the National Association withholding approval. And that is at war with this notion that the national associations are simply agents of the leagues and teams. Every drug conspiracy case that I've ever seen, somebody thinks, well, but look, they shot each other. They can't be part of the same conspiracy. That stuff happens in conspiracies, that there are disagreements about what is really in everyone's interest. And that's why, Judge Lynch, I would be content to rest on the fact that the complaint affirmatively does not provide support for any suggestion that national associations and leagues and teams are in alignment, with the exception of the allegations concerning U.S. Soccer and MLS, which themselves arguably are insufficient on their terms. But if we're talking about a conspiracy among the folks who adopted this policy, there has to be some suggestion that the other members of the FIFA Council shared this desire. Instead, all we have is an allegation about a single member of the FIFA Council who was a representative of U.S. Soccer. That's plainly insufficient under any pleading standard. But I do want to say just a word about the merits of this theory, because I want to give the Court some comfort that it would not be writing an unfair opinion if it said that this claim was not raised below. And to the extent that the Court thinks that Judge Caproni addressed this theory that the policy is concerted action, and again, I would say that that is not to be found in the opinion, that claim lacks merit. You know, the first reason is the reason that we've been talking about, which is that, you know, here, what we're talking about is a council that is not made up of competitors. The second is that the policy itself is not, by its terms, a binding rule. The press release, rather, is not a binding rule. The third is that if the claim here were that the policy is the concerted action, that claim would be subject to the rule of reason. And at a minimum, the complaint does not plausibly allege a valid definition of the market here. The definition of the market is reversed. But that's not an issue that's before us now, is it? I mean, we're not going to be talking about the market definition and the merits of the complaint and whether this is a per se division of markets or something that's subject to the rule of reason, and whether it is indeed reasonable if it is subject to the rule of reason. No one has ever gotten there in this case. Judge Caproni did not address that issue, and I would submit that if the Court thinks... It is way premature for us to think about that. Well, I would submit that if the Court disagrees with us and agrees with Mr. Kessler that the plaintiff here sufficiently alleged that the policy itself constituted the concerted action, that it should remand all of this to Judge Caproni so that she, in the first instance, can address whether or not the claim was sufficiently alleged, and if so, decide whether or not there are other grounds on which the claim should be dismissed. Of course the latter. When you say remand to determine whether the claims were sufficiently alleged, isn't that what's before us? No. I think if this Court concludes that the claim that the policy itself constituted concerted action was properly before the district court, Judge Caproni did not address that in her opinion. And Mr. Garr pointed to footnote 11 for that proposition. So you're going back to the waiver and forfeiture? I think if the Court crosses the bridge on waiver or, more accurately, forfeiture... Assume that. Yes. Then I think all of the rest of this needs to go back to Judge Caproni so that she can address the question that we were discussing for the last five or ten minutes, which is whether or not this alleged policy can constitute concerted action based on the allegations in the complaint. That was an issue that she did not address in the opinion because all she addressed... But my question, my question is, isn't that precisely the question that we are here to address? I don't... I don't feel. I mean, I think that you could address that, and we would submit that if you do, you should conclude that the policy is not concerted action without more, namely... What function would Judge Caproni perform that's different from the function that we are performing today in connection with reading these allegations, in particular, paragraph 117 of the amended complaint? So, to be clear, that is your function, which is to say, Judge Laurier, you are here to decide, we're asking you to decide whether or not this theory of concerted action was preserved below. If it was preserved below in your view... And both sides then briefed both the question of waiver and the question of the merits. Correct, but you would be addressing the merits in the first instance because I think that the clear reading of Judge Caproni's opinion, and the headers bear this out, but the text bears it out as well, is that she was only addressing the issue of whether or not the alleged policy was direct or circumstantial evidence of the broader conspiracy, and that she reserved the issue of whether or not the policy itself could be concerted action based on her belief, whether or not you think it was correct, that that was not the theory that was being advanced by Relevant. So, if you conclude that it was the theory that Relevant was pursuing, notwithstanding Mr. Kessler's disavowal of it at oral argument, you should give Judge Caproni the chance to actually address that. I think that's the judicially modest thing to do rather than addressing it in the first instance. Now, that having been said, we do think that it is clear that there is no personal jurisdiction over FIFA, and so from my client's perspective, we think that that would be an easy way to uphold a dismissal here, but other than that, you know, we would not be asking the court to do – But that, do you think, we could decide on our own without any interest by the district court or any ability of the district court to address the infrasound jurisdiction issue? We think that issue – That we should take on. But we shouldn't take on the, to me, thin distinction between whether the policy is direct evidence of a conspiracy and whether the policy is itself concerted action. To coin a phrase, Judge Lynch, we think that that is an obvious ground for dismissal here and so that the court could reach it, but of course, if the court chooses, it could leave that issue too for Judge Caproni on remand in the event that it concludes a remand is appropriate. But ultimately, in this case, we think that the complaint is clear that the concerted action was this broader conspiracy of leagues and teams, and in a circumstance in which this issue was fully ventilated at a hearing before the district court and the district court operated on the understanding that this was not the theory that was being pursued, it would be inequitable, above all, to Judge Caproni to say that she somehow erred. Unless the court has any further questions, we would ask that Judge Caproni's judgment be affirmed. Thank you. We'll hear from Amicus. May it please the court, Peter Butzfeld for the United States. We're here today to address an error in the district court's decision. The district court held that Relevant needed to plead an agreement to agree in order to allege concerted action under Section 1 of the Sherman Act. But a plaintiff doesn't need to plead an agreement to agree when it's challenging an association rule that governs a member's separate businesses. In those cases, the rule itself is direct evidence of concerted action. So, Mr. Butzfeld, I'm puzzled now about two things. I understand that you are focused on this particular issue and that you're not taking a position on the ultimate merits of this case at all or coming in in support of one side or the other. But why would we need to address the question that you are interested in at all if what Mr. Shanmugam and Mr. Garr have said is true, which is that this was never pled in the first instance as anything but an agreement to agree by them on one hand, and also that there is a sharp distinction between such a broad conspiracy case and a challenge to the policy. And not only that, there's a distinction between a challenge to the policy and the argument that the policy is direct evidence of agreement. That's several questions at once, but I'm interested in your answers because some things have been said here today that just I had not thought were the law. I could very well be wrong. And maybe I was wrong and puzzled in my reading of the district court's opinion and the complaint, perhaps because of conflating some of these things that they say are very different. Sure. In response to your first question about why the court should address this issue of an agreement to agree, the reason that we're urging the court to do so is because of the language in the district court's opinion that stated that even in cases involving a challenge to an association rule governing the member's separate businesses, there needs to be something more, some antecedent agreement. We think that that statement requires correction on appeal to prevent the district court's decision from being read as precedent for an agreement to agree requirement. And that was in the context of a reading of NASL. We haven't taken a position on how to read the complaint, but the language in the district court's opinion does. Of the decision, Judge Wesley's decision in the NASL case. Correct. The district court relied on a reading of NASL and an attempt to distinguish NASL in adopting the rule that it did of imposing an agreement to agree requirement. That's correct. In response to Judge Lynch's other question about the distinction between a challenge to an association rule and a challenge to an overarching conspiracy, we think that the distinction that NASL drew was between a challenge to the rule itself and a challenge to a broader conspiracy involving the application of that rule. The specific allegations in NASL were that there had been a conspiracy among the U.S. Soccer Federation, two of its member leagues, and an outside marketing company to, quote, manipulate the standards and, quote, selectively grant and deny waivers. We are asking the court to reaffirm the principle also discussed in NASL that if the plaintiff there had been directly challenging an association rule, that rule, if it governed members of separate businesses, was direct evidence of concerted action. But surely, whatever this complaint is, it's not a complaint, and I don't think anyone has said it is, that challenges the way in which a policy was implemented in the way that NASL was, as you just described it. We haven't taken a position on that specific question. Our position relates to the legal framework that applies if the court concludes that this is a challenge to an association rule. And my last is the one that puzzles me the most, which is what is the difference in the government's view, if any, between a challenge to the policy as itself an agreement to restrain trade and a challenge to the policy or a characterization of the policy as direct evidence of a conspiratorial agreement among the members of the association? I'm not sure that we would place much emphasis on the distinction, if any, between those two characterizations. The way we put it in our brief is that the rule is direct evidence of the concerted action and embodies an agreement. And embodies an agreement is the way you would characterize, at least without taking any position on what their complaint actually says, you would say that a complaint that did allege that the agreement embodies, the policy embodies a larger agreement is an appropriate, it's a claim under antitrust law. Correct. The rule or policy embodies an agreement among the parties when the rule governs members, separate businesses. And that there's not been a separate requirement that you show an agreement to agree to create that policy, specifically consciously entered into as a separate decision by all of the members of the association. Correct. That's our position, that the policy is direct evidence of concerted action when it governs the members' separate businesses. There's no need to allege anything further. It shows the agreement. It shows the agreement itself among the different associations here. Correct. You would have to, and this may be beyond the scope of what you're here to talk about today, but you would have to assert the policy and then some relationship between the association and its members that gave the policy meaning, right? I mean, it's not just the policy is sufficient on its own. You have to allege some facts about the trade association, maybe not much, and its members and their relationship. It's correct that when there's a challenge to an association rule that governs the members' separate businesses and the members have agreed to follow that policy, that suffices to show concerted action. We haven't taken a position on whether other types of member or association conduct would also satisfy the concerted action requirement, but it is the case that a challenge to a rule plus members' agreement to follow the rule or the association's rules writ large, including that one, is a form of concerted action. I understand why you're here, so let me know, but spin this out for me. We're at the motion to dismiss stage, and I understand that you're here to really help us understand the differing legal frameworks, but what are the evidentiary implications of what you're saying? After a motion to dismiss, how does this play out, direct evidence as opposed to circumstantial evidence of a conspiracy? The legal principle that we're asking the court to apply here is one that remains true throughout the case, that the association rule governing members' separate businesses is direct evidence of concerted action. There may be different standards under Twombly at the motion to dismiss stage versus Matsushita at the summary judgment stage, but we've taken a position on the overarching legal framework about how to assess certain association rules that would apply throughout the case. Presumably at the summary judgment stage, once you have this policy, it's direct evidence, and you proceed to trial in every case. That's really what my question is. We haven't taken a specific position on how the facts here might play out at summary judgment. It's simply the principle that the association rule governing members' separate businesses is direct evidence of concerted action. Well, but if it is direct evidence, a couple of things follow from that, right? Number one, as Judge Levier suggests, is that, well, I wouldn't necessarily rule out the possibility of a summary judgment motion if the particular facts were so strange that the direct evidence isn't good enough. But normally, if you have direct evidence, somebody testifies in effect. This is what we did. This is what happened. That's direct evidence. That's probably enough to create a fact question in most cases. But it would be subject to refutation, I take it, right? It's not conclusive evidence. Is that what you're saying? That the policy is not conclusive evidence, it's direct evidence, but theoretically, at least, subject to refutation without taking any position on what would refute it? Is that the distinction? That's why you're saying it's direct evidence? We haven't taken a view on that specific question into how this principle would apply at summary judgment. If the court found that, based on an association rule governing the members' separate businesses, and were to treat that as direct evidence, it presumably would apply normal summary judgment standards in determining how that principle plays out. And we don't have to go there, I take it, at this stage. We're just talking about what's an adequate complaint. This case arises on a motion to dismiss, correct? And there are other requirements, too. There are other requirements besides concerted action that may come up at the motion to dismiss stage or other stages of the case, yes. If the court has no further questions, we respectfully request that it correct the district court's legal error. Thank you. Thank you. I'm going to devote my time to the actual record. Speaking of the actual record, so both of your friends on the other side have told us a few times now that there are no allegations in the complaint, that the national associations are competitors. Yes, that is quote false. So, we specifically alleged in the complaint, actually, I think as early as paragraph one, that the following, specifically, FIFA and USSF, in combination with numerous FIFA affiliated men's top tier professional leagues and teams, including Major League Soccer and its teams, have entered into an agreement to divide geographic markets, including the United States market, which stifles competition in the US. The purpose and effect of defendants' anti-competitive agreement is to thwart cross-border competition between top tier men's professional soccer leagues and their teams. Absent this geographic market division, top tier men's professional soccer leagues and teams would compete with each other to conduct official season games in the United States. They're natural competitors, but they're prohibited from competing. That's right, and we also have specifically alleged the FIFA statutes in our complaint. One of the FIFA statutes that specifically goes to this is statute, and this is on A, I'm sorry, this is on A74 of the record. 14 of the FIFA statutes about the obligations of each national association. 14D says, to cause their own members, that would be the national leagues and teams, to comply with the statutes, regulations, directives, and decisions of the FIFA bodies. The FIFA bodies then include the FIFA council, by definition, which issued this policy. The other question on the record, we've heard several times that the only policy that you allege is, in fact, a press release that says, we talked about this. Is there any allegation of any stronger policy or any more formally adopted policy? Yes, we alleged in the complaint, specifically in paragraph 37, which summarizes it, that the FIFA council voted as a body to adopt this policy. Yeah, that's kind of what I remembered, but I was starting to lose my grip on reality. Yes. I could understand listening to my colleagues' arguments, which don't match the complaint allegations. I could understand how it creates confusion. The press release announced the vote of the FIFA council. That happened to be the written way we all learned of the vote that they took. And paragraph 37 says the following. On October 26, 2018, the FIFA council adopted a policy embodying the anti-competitive market division agreement at issue in this case, exactly what the government said is sufficient, which prohibits official season games from being played anywhere except the territory allocated to the participating leagues and teams. The council did so in direct response to the efforts of Relevant from its headquarters in this district to organize and promote an official league of soccer game in the US, which is outside of our league's territory. The hearing, you heard council say, I misled the court. Here's what actually happened. This is page 35 of the transcript. The court, this is Judge Capone. What you are saying now is the only factual allegation in this 54 complaint that matters is that FIFA has a rule that says you can't play out of your own geographic territory. Mr. Kessler, well, that's the main factual allegation, the court. So all the stuff about what that FIFA council, for example, FIFA council adopted the rule at the behest of US soccer, major league soccer. I said, yes, that's irrelevant. It is irrelevant, Mr. Kessler, to whether there is an agreement. It will become relevant when we start talking about why it is an illegal agreement and whether or not there's a jurisdiction over FIFA and other issues. So this could not have been more crystal clear. I am as baffled by you as when I hear council's allegations about this. It is an attempt, frankly, to avoid this issue because they know the court below got it wrong. Finally, I hear this plea to don't decide anything. Let's resend this issue back. I'm standing here with my client three years into this case. We have not started discovery. What this is an effort to do is to make this case last forever so that my client has to give up. That is not the way antitrust cases should be held. I urge this court to decide that the motion to dismiss is reversed. I would prefer that you found jurisdiction. But if not, to decide that FIFA is not indispensable so that the case is not further delayed. I am very concerned. We're going to go back. They're going to re-raise jurisdiction. They're going to ask for another motion to stay discovery indefinitely. We'll have a decision on jurisdiction. We may have to come back to you again. Meanwhile, instead of three years into the case, I'm going to be five years into the case. Many district court judges would allow discovery to proceed, but Judge Capone did not in this case. So I would respectfully suggest we need a clear rule. The government needs a clear rule. And we hope- Yes? Do we have to grapple with the indispensable party issue? Well, I have appealed it. And it is in order of the court below. So I believe you should decide that unless you decide that there is personal jurisdiction over FIFA, which would render that issue moot. Yeah, it was an alternate ground for dismissal, right? So if we don't address it, then I suppose it stands. But you've appealed it. And so we have to decide something about that. But I take it there are two prongs. One prong is necessary and indispensable are no longer in the rules. But that's the way I learned in law school, so I keep saying that. One is that issue. Are they somebody who has to be sued? And the other is, is there jurisdiction over them? Now that you have sued them, if there is jurisdiction over them, you win. Alternatively, I suppose, if they're not really necessary parties in the first place, then in personam jurisdiction doesn't matter. On the other hand, now that you have sued them, I don't know if you're telling us if we decided that you'd get rid of them again. But you don't have to say that. I'm just saying, it sounds to me like- I think Your Honor has laid out all the scenarios. The easiest way would be to find jurisdiction so that we don't have to deal with that. If you remand it, I would like you to decide they're not necessary so I can proceed with the case against USSF. Even while they may be fighting jurisdiction, perhaps I will convince the court that discovery should proceed. Because it'll be clear that there's a case against USSF. I hear what you'd like. Okay. Thank you very much for your time and patience, Your Honor. Thank you all. Very, very well done by everyone. Very helpful. Thank you. We'll take the matter under advisement.